ORDERED.

**Dated: March 19, 2018**

_____
Roberta A. Colton
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: ) <br> ) <br> Patricia Smith-Johnson, ) <br> ) <br> Debtor. ) <br> ) <br> _____ ) <br> ) <br> PATRICIA E. SMITH-JOHNSON a/k/a ) <br> PATRICIA E. SMITH-CLARK, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> WEST SHORE VILLAGE MASTER ) <br> CORPORATION, INC., a/k/a WEST ) <br> SHORE VILLAGE MASTER ASSOCIATION, ) <br> RESOURCE PROPERTY MANAGEMENT, INC., ) <br> RABIN PARKER, P.A., ) <br> BENNETT L. RABIN, ESQUIRE, and ) <br> MONIQUE E. PARKER, ESQUIRE, ) <br> ) <br> Defendants. ) <br> ) | Case No. 8:16-bk-02514-RCT <br> Chapter 13 <br><br><br><br><br> Adv. No. 8:17-ap-00821-RCT |

**MEMORANDUM DECISION AND ORDER GRANTING**
**DEFENDANTS RABIN PARKER, P.A., BENNETT L. RABIN, ESQUIRE**
<u>**AND MONIQUE E. PARKER, ESQUIRE'S AMENDED MOTION TO DISMISS**</u>

Defendants Rabin Parker, P.A., Bennett L. Rabin, Esquire and Monique E. Parker, Esquire (collectively the "Attorney Defendants"), move to dismiss Counts I and III of the Complaint for failure to state a claim (the "Motion to Dismiss") (Doc. 11).  After consideration of the arguments and papers presented, the Motion to Dismiss is GRANTED.

## BACKGROUND

From June 10, 2013 to May 18, 2015, Defendant West Shore Village Master Corporation, Inc. ("West Shore") doggedly pursued Plaintiff, Patricia Smith-Johnson ("Plaintiff" or "Ms. Smith-Johnson"), through the Florida state courts to collect past due condominium assessments, late penalties, interest, legal costs and legal fees.  The Attorney Defendants represented West Shore during its state court debt collection efforts.

Ms. Smith-Johnson filed a Chapter 13 bankruptcy petition on March 24, 2016.  On November 16, 2017, she filed this adversary proceeding against West Shore, Resource Property Management, Inc. and the Attorney Defendants (the "Complaint").  Specifically, Ms. Smith-Johnson alleges that the Attorney Defendants violated (i) the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et. seq*. ("FDCPA") (Doc. 1, ¶¶ 117-121); and (ii) Fla. Stat. §§ 501.201 – 501.213, Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA") (Doc. 1, ¶¶ 130-137) by using false, deceptive, or misleading representation or means in connection with their attempt to collect a consumer debt from Ms. Smith-Johnson.  Ms. Smith-Johnson seeks actual and statutory damages in addition to attorneys' fees and costs.

## LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6), as applicable to this proceeding by Fed. R. Bankr. P. 7012, provides that a complaint may be dismissed, upon motion, for the failure to state a claim upon which relief may be granted. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept the allegations of the complaint as true and view the complaint in the light most favorable to the plaintiff. The allegations must permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

If the violation of a statute of limitations appears on the face of a complaint, the defense may be considered on a motion to dismiss. *Quiller v. Barclays Am. Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984). In this analysis, a court may also consider any exhibits to a complaint, Fed. R. Bankr. P. 7010(c), and may take judicial notice of its own records. Fed. R. Evid. 201(d). *See generally Solis v. Global Acceptance Credit Co.*, 601 Fed. Appx. 767, 771 (11th Cir. 2015).

## ASSUMED FACTS

Ms. Smith-Johnson owned two residential condominiums at West Shore Village Two located in St. Petersburg, Florida and known as 3281 38th Way South, Unit C (herein "Unit 3281-C"), and 3244 38th Way South, Unit B (herein "Unit 3244-B"). (Doc. 1, ¶¶ 65, 71).

On June 10, 2013, Ms. Smith-Johnson received a dunning letter from the Attorney Defendants demanding payment in the amount of $2,856.07 for condominium assessments and unlawfully imposed late penalties, interest, legal costs and legal fees related to Unit 3244-B. (Doc. 1, ¶¶ 86-88; Ex. B). The letter enclosed a copy of a Claim of Lien for Condominium Assessments

prepared by and recorded by the Attorney Defendants on June 14, 2013 in the public records of Pinellas County, Florida.  (Doc. 1, ¶¶ 88-89; Ex. B).

Ms. Smith-Johnson was served with a foreclosure complaint on October 21, 2013.  (Doc. 1, ¶ 90; Ex. G).  Thereafter, on June 30, 2014, the county court for Pinellas County, Florida summarily entered the Uniform Final Judgment of Foreclosure of Unit 3244-B against Ms. Smith-Johnson in the amount of $13,345.81.  (Doc. 1, ¶ 94; Ex. I).

Also on June 10, 2013, Ms. Smith-Johnson received a dunning letter from the Attorney Defendants demanding payment in the amount of $3,128.36 for condominium assessments and unlawfully imposed late penalties, interest, legal costs and legal fees related to Unit 3281-C.  (Doc. 1, ¶¶ 98-100; Ex. A).  The letter enclosed a copy of a Claim of Lien for Condominium Assessments prepared by and recorded by the Attorney Defendants on June 14, 2013 in the public records of Pinellas County, Florida.  (Doc. 1, ¶ 101; Ex. A).

On October 24, 2013, Ms. Smith-Johnson was served with a second foreclosure complaint. (Doc. 1, ¶ 102; Ex. K).  And, on June 30, 2014, the county court for Pinellas County, Florida, summarily entered the Uniform Final Judgment of Foreclosure of Unit 3281-C against Ms. Smith-Johnson in the amount of $13,491.97.  (Doc. 1, ¶ 105; Ex. M).

Ms. Smith-Johnson successfully appealed both foreclosure judgments to the circuit court for Pinellas County, Appellate Division.  Both judgments were reversed by order dated May 18, 2015, on grounds that the affidavits supporting the county court's summary judgments were untimely.  (Doc. 1, ¶ 95; Ex. J).

## ANALYSIS

**I.    FDCPA Claims Against the Attorney Defendants Are Time-Barred**

Count I of the Complaint alleges that the Attorney Defendants violated the FDCPA by engaging in false, deceptive, and misleading practices to collect a debt. Specifically, Plaintiff accuses the Attorney Defendants of violating the FDCPA by sending two June 10, 2013 letters that improperly demand that she pay late penalties and interest on the unpaid balance of assessments. The Attorney Defendants argue that these claims fail as a matter of law because they are barred by the FDCPA's one-year statute of limitations.

Section 1692k(d) provides that actions to enforce liability created by the FDCPA must be brought "within one year from the date on which the violation occurs." *Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995). In *Maahs v. United States*, 840 F.2d 863, 866-67 (11th Cir. 1988), the court held that Fed. R. Civ. P. 6(a)'s method of computing time applies to the FDCPA. Rule 6(a) in turn provides that computation of any period of time prescribed by a statute shall exclude the date of the event from which the time begins to run. *Maloy*, 64 F.3d at 608.

Accordingly, Plaintiff was required to bring suit "within one year from the date that the alleged violation of the FDCPA occurred, and the calculation of the time period begins on the day after the alleged violation occurred." *Id*. The *Maloy* court determined that the alleged FDCPA violation occurred on the date the collection letter was mailed. *Id.* Here, the day after the Attorney Defendants mailed the collection letters, June 11, 2013, is the date from which the one-year statute of limitations begins to run. Any claims arising out of the letters would had to have been brought no later than June 10, 2014. This adversary proceeding was filed in 2017 – three years too late.

Plaintiff's fallback argument is that "while the allegations contained in [the letters] may be time barred, a continuing violation, and therefore subsequent causes of action, [have] accrued at every point in the underlying state court actions." (Doc. 16, ¶ 5). This argument also fails.

"[N]umerous courts have rejected the contention that an action taken in an existing state court collection proceeding is a 'new' violation or a continuing violation, for limitations purposes." *Farrell v. Patrick A. Carey, P.A.*, No. 6:12-cv-1206-Orl-28DAB, 2012 WL 6803654, *3 (M.D. Fla. Dec. 19, 2012) (collecting cases), *adopted by* 2013 WL 85132 (M.D. Fla. Jan. 8, 2013). "As one court put it: 'The course of litigation is not, in itself, a 'continuing violation' of the FDCPA.'" *Id.* (citing *Schaffhauser v. Burton Neil & Assocs.*, No. 1:05-CV02075, 2008 WL 857523, *2 (M.D. Pa. 2008). "For conduct during litigation to be actionable, a plaintiff must allege […] that the conduct is a violation of the FDCPA independent of the act of filing suit. *Id.* Accordingly, only conduct unrelated to the foreclosure litigation can form the basis of a claim against the Attorney Defendants and hence a new trigger of the statute of limitations.

But Plaintiff's Complaint does not allege any improper conduct by the Attorney Defendants unrelated to, or independent of, the foreclosure litigation. Accordingly, Plaintiff's FDCPA claims based on the demand letters expired on June 10, 2014. And, at best, any separate claims based upon the conduct of the foreclosure litigation, expired on October 25, 2014, one year after the last lawsuit was filed. *Zenon v. Palisades Collection, LLC*, No. 8:07-cv-2198-T-30MAP, 2008 WL 506231 (M.D. Fla. Feb. 21, 2008).[1]

---

[1] Section 108(b) of the Bankruptcy Code does not offer any relief to Plaintiff because § 108 only applies if the statute of limitations did not expire by time the bankruptcy was filed. Here the statute of limitations expired well before the bankruptcy petition.

6

Recognizing her precarious position, Plaintiff's Response to the Motion to Dismiss, attempts to shift the focus from the early demand letters to the later proofs of claim filed in her chapter 13 bankruptcy case. She represents that "Defendants, for and on behalf of their client, filed" an improper proof of claim. (Doc. 16, ¶ 6). And, she points the court to Proof of Claim 6-2, filed July 19, 2016. *Id*.

Plaintiff misstates the record in two important respects. First, the Complaint only alleges that "the Association" (West Shore) filed the proofs of claim -- not the Attorney Defendants. (Doc. 1, ¶¶ 110-111). Second, none of the proofs of claim filed on behalf of West Shore in Ms. Smith-Johnson's chapter 13 case were filed by the Attorney Defendants.[2]

For these reasons, Count I of the Complaint, as to the Attorney Defendants, will be dismissed. However, because Plaintiff insists that she still may be able to amend her Complaint to state a timely FDCPA claim against the Attorney Defendants, the dismissal will be without prejudice, and with one opportunity to file an amended complaint.

## II.   **Plaintiff Fails to State a FDUTPA Claim Against Attorney Defendants**

In Count III, Plaintiff alleges that the Attorney Defendants violated FDUTPA by engaging in false, deceptive, and misleading practices to collect a debt. (Doc. 1, ¶¶ 130-137). The Attorney Defendants respond that (i) the Complaint fails to state a claim because collecting a debt is not the kind of "trade or commerce" covered by FDUTPA and (ii) any alleged FDUTPA violation is barred by the "litigation privilege" recognized under Florida law.

### A.   **Trade or Commerce**

Although attorneys are not automatically exempt from the operation of FDUTPA, "the usual course of legal practice will not implicate the statute because express prerequisites required

---

[2] *See* Claim 6 in Case No. 16-02514 and its amendments.

to invoke FDUTPA will not ordinarily be satisfied. *Kelly v. Palmer, Reifler, & Assoc., P.A.*, 681 F. Supp. 2d 1356, 1371 (S.D. Fla 2010).

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). The term "trade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8).

Plaintiff's argument that the June 10, 2013 pre-suit demand letters are within the scope of the term "trade or commerce" misses the mark. *Kelly*, 681 F. Supp. 2d at 1376. *See also Economakis v. Butler & Hosch, P.A.*, No. 2:13-cv-832-FtM-38DNF, 2014 WL 820623 (M.D. Fla. March 3, 2014) (and cases cited therein). The Attorney Defendants' alleged acts – conduct occurring during the exercise of a legal remedy – had zero connection to any "trade or commerce." *Kelly*, 681 F. Supp. 2d at 1375. As such, the allegations in the Complaint simply do not rise to the level of a proper FDUTPA claim against the Attorney Defendants. *Economakis*, 2014 WL 820623, *3; *see also Acosta v. James A. Gustino, P.A.*, No. 6:11-cv-1266-Orl-31GJK, 2012 WL 4052245 (M.D. Fla. September 13, 2012) (attorneys were not engaged in "trade or commerce" by sending demand letters or engaging in debt collection efforts); *State, Office of Att'y Gen. v. Shapiro & Fishman*, 59 So. 3d. 353 (Fla. 4th DCA 2011).

Plaintiff next tries to circumvent FDUTPA's statutory requirement by suggesting that, as a member of the Association, the Attorney Defendants were somehow working "directly" for her in attempting to collect Association expenses from her. (Doc. 16, ¶¶ 15-18). This argument is convoluted and unsupported by law. The Complaint and exhibits to the Complaint plainly

demonstrate that the Attorney Defendants were retained and acting on behalf of West Shore, the Association. Nothing in the Complaint suggests that they solicited the Plaintiff for legal services or for any other purpose involving trade or commerce. They sent statutorily required demand letters and filed and prosecuted two lawsuits. Plaintiff's effort to squeeze these alleged facts into a FDUTPA claim is unavailing.[3]

### B. Litigation Privilege

In Florida, the litigation privilege "essentially provid[es] legal immunity for actions that occur in judicial proceedings." *Kelly*, 681 F. Supp. 2d at 1367 (citing *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So.2d 380, 383 (Fla. 2007)). The Florida Supreme Court stated that "[a]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding … so long as the act has some relation to the proceeding." *Echevarria*, 950 So.2d at 384 (citation omitted). The Attorney Defendants argue that this privilege bars Plaintiff's Florida law claims.

The issue here, as in *Kelly*, is whether the litigation privilege can be invoked for communications made prior to initiation of a judicial proceeding, *i.e.* the June 10, 2013 demand letters. Under Florida law, the litigation privilege "extends to the protection of the judge, parties, counsel, witnesses, and arises immediately upon the doing of any act required or permitted by law in the due course of the judicial proceeding or as necessarily preliminary thereto." *Kelly*, 681 F. Supp. 2d at 1367-68 (quoting *Pledger v. Burnup Sims, Inc.*, 432 So.2d 1323, 1325-26 (Fla. 4th DCA 1983). *But see Trent v. Mtg. Elec. Registration System, Inc.*, 618 F. Supp. 2d 1356, 1360

---

[3] Plaintiff's reliance on *Bank of America, N.A. v. Zaskey*, 2016 WL 2897410 (S.D. Fla. May 18, 2016) does not save her FDUTPA claim against the Attorney Defendants. *Zaskey* involved a mortgage servicer. The court notes that a mortgage servicer engaged in collection is not engaged in "trade or commerce" within the scope of FDUTPA. The challenged activity was not debt collection. Instead the FDUTPA claim survived a motion to dismiss based on "force-placement of insurance on the property." *Id.* at *11. The court expressly concludes that "debt collection activity" is not actionable under FDUTPA. *Id.*

(M.D. Fla. 2007), *aff'd* 288 Fed. Appx. 571 (11th Cir. 2008) (pre-suit communications not required by law may not be covered by Florida's litigation privilege).

The June 10, 2013 demand letters sent to Ms. Smith-Johnson were required by Fla. Stat. § 718.116 titled "Condominiums: Assessments; liability; lien and priority; interest; collection," as a preliminary and necessary step in West Shore's foreclosure of its liens for assessments. Each June 10, 2013 letter enclosed a copy of a Claim for Condominium Assessments filed pursuant to Fla. Stat. § 718.116. (Doc. 1, Exs. A and B). Fla. Stat. § 718.116(6)(b) provides:

> (b) No foreclosure judgment may be entered until at least 30 days after the association gives written notice to the unit owner of its intention to foreclose its lien to collect the unpaid assessments….

Plaintiff's own description of the content of the June 10, 2013 letters suggests that the letters were intended as a condition precedent to filing suit. (*See* Doc. 1, ¶¶ 47-48). However, because the court does not find that Count III states a FDUTPA claim against the Attorney Defendants in the first instance, it is unnecessary to decide whether the affirmative defense of litigation privilege would bar any such claim.

For these reasons, Count III as to the Attorney Defendants will be dismissed for failure to state a claim under FDUTPA.

It is therefore ORDERED that:

1. The Motion to Dismiss (Doc. 11) is **GRANTED,** to the extent stated in this Order.

2. Count I of the Complaint is **DISMISSED as to the Attorney Defendants, without prejudice**. Plaintiff may amend her Complaint within twenty (20) days if she can allege a violation of the FDCPA within the applicable statute of limitations. Failure to do so will result in the dismissal of Plaintiff's FDCPA claim against the Attorney Defendants with prejudice.

3. Count III of the Complaint is **DISMISSED as to the Attorney Defendants, with prejudice.**